**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

JOHN F., II,

        *Plaintiff,*

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

        *Defendant.*

_____/

Case No. 1:25-cv-12774

Patricia T. Morris
United States Magistrate Judge

**<u>MEMORANDUM OPINION AND ORDER ON</u>**
**<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)</u>**

### I.    <u>CONCLUSION</u>

For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 11) is **DENIED**, the Commissioner of Social Security's motion for summary judgment (ECF No. 13) is **GRANTED**, and the decision of the administrative law judge (ALJ) is **AFFIRMED**.

### II.    <u>ANALYSIS</u>

#### A.    **Introduction and Procedural History**

On November 3, 2022, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on October 12, 2019.  (ECF No. 5-1, PageID.43).  The Commissioner initially denied the application on June 14, 2023,

1

and on reconsideration on April 23, 2024. (*Id.*). Plaintiff then requested a hearing before an ALJ, which was held on December 5, 2024. (*Id.*). The ALJ issued a written decision on February 14, 2025, finding Plaintiff was not disabled. (*Id.* at PageID.43–54). Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied the request on April 23, 2025. (*Id.* at PageID.27–29).

Following the Appeals Council's denial of review, Plaintiff sought judicial review on September 3, 2025. (ECF No. 1). The parties consented to the Undersigned "conducting any or all proceedings in this case, including entry of a final judgment and all post-judgment matters." (ECF No. 8). The parties have since filed cross-motions for summary judgment for which briefing is complete. (ECF Nos. 11, 13, 14).

**B.      Standard of Review**

District courts have jurisdiction to review the Commissioner's final administrative decisions pursuant to 42 U.S.C. § 405(g). The review is restricted solely to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (citation modified). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th

Cir. 2007) (citation modified).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation modified).

A district court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  Courts will "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Id.* (citation modified).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability."  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

3

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, [the ALJ] consider[s] [the claimant's] work activity, if any.  If [the claimant is] doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.

> (ii) At the second step, [the ALJ] consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled.

> (iii) At the third step, [the ALJ] also consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant has] an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement, [the ALJ] will find that [the claimant is] disabled.

> (iv) At the fourth step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . past relevant work. If [the claimant] can still do . . . past relevant work, [the ALJ] will find that [the claimant is] not disabled.

> (v) At the fifth and last step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work.  If [the claimant] can make an adjustment to other work, [the ALJ] will find that [the claimant is] not disabled.  If [the claimant] cannot make an adjustment to other work, [the ALJ] will find that [the claimant is] disabled.

20 C.F.R. § 404.1520(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence

4

and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  The claimant must provide evidence establishing his or her residual functional capacity (RFC), which "is the most [the claimant] can still do despite [his or her] limitations," and is assessed using "all the relevant evidence in [the] case record."   20 C.F.R.  §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

Following the five-step sequential analysis, the ALJ determined Plaintiff was not disabled.  (ECF No. 5-1, PageID.54).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 12, 2019, the alleged onset date.  (*Id.* at PageID.45).   At step two, the ALJ found the following severe impairments: degenerative disc disease of the cervical spine status post fusion C4–

C4; degenerative disc disease of the lumbar spine; lumbar radiculopathy; degenerative disc disease of the thoracic spine; bilateral greater trochanteric bursitis; major depressive disorder; generalized anxiety disorder; unspecified personality disorder; and alcohol use disorder in full sustained remission. (*Id.* at PageID.46).

At step three, the ALJ found none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing. (*Id.* at PageID.46–48). Next, the ALJ found Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except:
> • never climb ladders ropes or scaffolds;
> • occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl;
> • avoid concentrated use of hazardous moving machinery;
> • avoid all exposure to unprotected heights;
> • limited to simple tasks performed in a work environment free of fast paced production requirements, such as assembly line work, involving only simple work-related decisions and routine workplace changes; and
> • only occasional interaction with the public, coworkers, and supervisors.

(*Id.* at PageID.48–49).

At step four, the ALJ found Plaintiff had no past relevant work. (*Id.* at PageID.53). However, at step five, the ALJ found other jobs in the national economy Plaintiff could perform. (*Id.*). Specifically, the ALJ found Plaintiff could perform the requirements of a housekeeping cleaner (138,000 jobs in the national economy), a mail clerk (35,000), and a small products assembler (70,000). (*Id.*). The ALJ thus concluded Plaintiff was "not disabled." (*Id.* at PageID.54).

   E.   **Administrative Record**

6

Plaintiff raises two issues on appeal. First, he argues the ALJ's step three analysis was deficient for failing to examine the opinion of a psychological consultative examiner, Dr. Nathalie Menendes. Second, he argues the ALJ erred by failing to properly evaluate Dr. Menendes' medical opinion at step four. While the Court has reviewed the entire record, it will only summarize the evidence relevant to Plaintiff's issues on appeal.

Plaintiff suffers from chronic back pain and depression related to his pain. (ECF No. 5-1, PageID.269). He alleges this "vicious circle" makes it so that he cannot focus for extended periods and makes him irritable and easily agitated. (*Id.* at PageID.71, 269). Plaintiff had cervical fusion surgery in 2015. (*Id.* at PageID.71). He still has pain in his neck and back daily and rates it, on average, a 3.5–5/10. (*Id.* at PageID.72, 76). He manages his pain with over-the-counter medication and bi-monthly epidural shots. (*Id.*). Plaintiff also had a spinal stimulator implanted in his back in 2022. (*Id.* at PageID.73). Plaintiff deals with muscle spasms in his back and, if he has been up and about, he will usually have to pause mid-day to lie down for about a half hour and then again in the evening. (*Id.* at PageID.81–82). Plaintiff cooks and completes most household chores, although he hires someone for lawncare and snow removal due to his back. (*Id.* at PageID.271).

Plaintiff also suffers from depression, anxiety, and anger, for which he takes Cymbalta. (*Id.* at PageID.76–77). From a mental standpoint, Plaintiff feels he

cannot work full time due to fixating on things, over-reacting, lashing out at co-workers, not having patience with the general public, and not working well with others. (*Id.* at PageID.83).

In May 2023, Plaintiff completed a psychological consultative examination with Dr. Nathalie Menendes. (ECF No. 5-5, PageID.1084–87). In addition to the above-mentioned symptoms, he shared that he has feelings of hopelessness, low motivation, and a defeatist attitude with occasional suicidal ideation without any attempts. (*Id.* at PageID.1084). He also shared he was fired from his last two jobs and that he did not play well with others. (*Id.*).

Plaintiff reported that he lives with his wife and children but that they sometimes had a rocky relationship. (*Id.* at PageID.1085). He reported good relationships with most of his relatives and had a few good friends. (*Id.*). Dr. Menendes reported a fair rapport with Plaintiff. (*Id.*). Plaintiff also reported enjoying DJ'ing and CrossFit but that he could not do them much because of his back. (*Id.*). In terms of daily activities, Plaintiff reported taking care of the home, such as taking his daughter to school, taking care of his children, cooking and going to the grocery store, and going to the gym if he feels well enough. (*Id.*). Dr. Menendes observed that Plaintiff drove himself to the appointment, his posture and gait were normal, his clothing was clean and casual, and that he was responsive and talkative. (*Id.*).

Plaintiff's "contact with reality was good.  His insight seems good.  His self-esteem is good.  His motor activity was normal.  His motivation is good and he is able to function independently." (*Id.* at PageID.1086).  No unusual thought content was noted during the interview. (*Id.*).  Plaintiff reported anxiety and that his "back [was] just blasting today." (*Id.*).  Testing of his mental capacity, abstract thinking, judgment, and memory were all normal. (*Id.* at PageID.1086–87).  Dr. Menendes concluded:

> Based on today's evaluation, the claimant is able to understand simple and one step instructions and work procedures but will have moderate difficulty remembering them.  He will have marked difficulty understanding and remembering complex and multi-step instructions and work procedures. He will have marked problems concentrating and persisting through a typical 8 hour day.  He should be able to maintain socially appropriate behavior.  He should be able to adjust to changes in his routine and environment.

(*Id.* at PageID.1087).  The ALJ found this opinion generally unpersuasive. (ECF No. 5-1, PageID.52).  Further facts will be discussed below as necessary.

**F.     Governing Law**

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B).  The regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources.  An acceptable medical source means a medical source who is a:

9

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed psychologist, which includes:

    (i)    A licensed or certified psychologist at the independent practice level; or

    (ii)    A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only. For this source, *qualified* means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language Pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only . . . ;

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice . . . .

20 C.F.R. § 404.1502(a) (2021).  A medical source is

> an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d).  In contrast, a nonmedical source is "a source of evidence who is not a medical source."  *Id.* § 404.1502(e).  "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy."  *Id.*

The Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  *Id.* § 404.1520c(a).  "The most important factors [the SSA] consider[s] when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)."  *Id.*  The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case.  *Id.* § 404.1520c(c).

The first factor is "supportability."  For this factor, "[t]he more relevant the

11

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with the claimant." *Id*. § 404.1520c(c)(3). This factor includes analysis of:

(i)    Length of the treatment relationship. The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii)    Frequency of examinations. The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii)    Purpose of the treatment relationship. The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv)    Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help

demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)    Examining relationship.  A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder.

*Id.*

The fourth factor of the SSA's analysis is "specialization."  In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

*Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors."  These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding."  *Id.* § 404.1520c(c)(5).  Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.*  Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative

medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement,

> [b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

*Id.* § 404.1520c(b)(1). The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2). As such, the SSA

> will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative

14

medical findings in [the claimant's] determination or decision. [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3). The regulations clarify that the SSA is "not required to articulate how [it] considered evidence from nonmedical sources using the requirements of paragraphs (a)–(c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c). The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities"; "[d]isability examiner findings," meaning "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate

15

determination about whether [the claimant is] disabled"; and "[s]tatements on issues reserved to the Commissioner[,]" including

 (i)  Statements that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work;

 (ii)  Statements about whether or not [the claimant has] a severe impairment(s);

 (iii)  Statements about whether or not [the claimant's] impairment(s) meet the duration requirement . . . ;

 (iv)  Statements about whether or not [the claimant's] impairment(s) meets or medically equals any listing in the Listing of Impairments . . . ;

 (v)  Statements about what [the claimant's] residual functional capacity is using [the SSA's] programmatic terms about the functional exertional levels . . . instead of descriptions about [the claimant's] functional abilities and limitations . . . ;

 (vi)  Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work . . . ;

 (vii)  Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule . . . ; and

 (viii) Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review.

*Id.* § 404.1520b(c)(3).

The regulations also provide that

[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not

binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504. Therefore, the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.* The SSA will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim . . . ." *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." *Id.* § 404.1502(g). Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," which "include chemical tests (such as blood tests),

17

electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain:

> In determining whether [the claimant is] disabled, [the SSA will] consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The SSA] will consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work.

*Id.* § 404.1529(a). But the SSA clarified that

> statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.* Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]." *Id.* The

18

SSA will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it] will carefully consider any other information [the claimant] may submit about [his or her] symptoms." *Id.* § 404.1529(c)(3). This other information may include "[t]he information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or aggravate [the claimant's] symptoms, what medications, treatments or other methods [the claimant uses] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living," which "is also an important indicator of the intensity and persistence of [the claimant's] symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons.

*Id.* Factors relevant to a claimant's symptoms, such as pain, include:

    (i)    [D]aily activities;

    (ii)    The location, duration, frequency, and intensity of . . . pain or other symptoms;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

    (v)    Treatment, other than medication, . . . received for relief of . . . pain or other symptoms;

    (vi)    Any measures . . . used to relieve . . . pain or other symptoms.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get benefits, [the claimant] must follow treatment prescribed by [his or her] medical source(s) if this treatment is expected to restore [his or her] ability to work." *Id.* § 404.1530(a). Stated differently, "[i]f [the claimant does] not follow the prescribed treatment without a good reason, [the SSA] will not find [the claimant] disabled or, if [the claimant is] already receiving benefits, [the SSA] will stop paying . . . benefits." *Id.* § 404.1530(b). Acceptable (or "good") reasons for failure to follow prescribed treatment include:

    (1)    The specific medical treatment is contrary to the established teaching and tenets of [the claimant's] religion;

    (2)    The prescribed treatment would be cataract surgery for one eye,

> when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4) The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for [the claimant]; or

(5) The treatment involves amputation of an extremity, or a major part of an extremity.

*Id.* § 404.1530(c).

### G.    Argument and Analysis

As stated above, Plaintiff argues the ALJ's step three analysis was deficient for failing to examine the opinion of a psychological consultative examiner, Dr. Menendes. Second, he argues the ALJ erred by failing to properly evaluate Dr. Menendes' medical opinion at step four.

#### 1.    Step Three

Plaintiff argues the ALJ failed to build an accurate and logical bridge to his conclusion that Plaintiff was only moderately limited in each of the four areas of functioning (paragraph B criteria) by failing to take into account Dr. Menendes' opinion that he had marked difficulties in two of the four areas. (ECF No. 11, PageID.1791).

The plaintiff has the burden to show that his impairments meet or medically

equal a listed impairment. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 413 (6th Cir. 2011).

> The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits.

*Id.* at 414. "The Paragraphs B and C criteria delineate sets of functional limitations used to assess the severity of the mental disorder." *Nicholas B. v. O'Malley*, No. 24-cv-169, 2025 WL 597085, at *3 (W.D. Ky. Feb. 7, 2025) (citing 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)), *report and recommendation adopted sub nom. Nicholas B. v. Dudek*, 2025 WL 595176 (W.D. Ky. Feb. 24, 2025). Paragraph B criteria comprise the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

Even where the ALJ's step three analysis is "quite cursory," a remand is unnecessary if the ALJ's decision, read as a whole, demonstrates sufficient consideration of the relevant evidence to allow for meaningful judicial review. *Day v. Comm'r of Soc. Sec.*, No. 16-cv-12913, 2017 WL 4960178, at *3 (E.D. Mich. Sept. 28, 2017) (citing *Gower v. Comm'r of Soc. Sec.*, No. 13-cv-14511, 2015 WL

22

163830, at *9 (E.D. Mich. Jan. 13, 2015)).

First, it is important to note that Dr. Menendes did not opine Plaintiff had marked limitations in two of the four *broad* areas of mental functioning. Although Plaintiff argues Menendes "concluded that Plaintiff would have marked difficulty in the area of understanding, remembering, and applying information as well as the area of concentrating, persisting, and maintaining pace," (ECF No. 11, PageID.1793), this is inaccurate. Menendes actually opined Plaintiff would "have marked difficulty understanding and remembering *complex and multi-step instructions and work procedures*. He will have marked problems concentrating and persisting *through a typical 8 hour day*." (ECF No. 5-5, PageID.1087 (emphases added)). This is important because

> To satisfy the Paragraph B criteria, the claimant's mental impairment must result in one "extreme" limitation or two "marked" limitations from four broad areas of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. Whereas a marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

*Nicholas B.*, 2025 WL 597085, at *3 (citing 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00). Thus, Menendes did not opine Plaintiff was markedly limited in two of the four *broad* areas of functioning, just in two narrower aspects within the four broad areas. *See Andrew B. v. Comm'r of Soc. Sec.*, No. 25-cv-13300, 2026 WL 1675181, at *12 (E.D. Mich. May 20, 2026), *report and recommendation adopted*,

2026 WL 1670105 (E.D. Mich. June 8, 2025).

Furthermore, the ALJ adopted an RFC limitation consistent with Menendes' opinion as to Plaintiff's inability to understand and remember complex and multi-step instructions and work procedures, limiting Plaintiff "to simple tasks performed in a work environment free of fast paced production requirements, such as assembly line work, involving only simple work-related decisions and routine workplace changes." (ECF No. 5-1, PageID.49).  Therefore, even if the ALJ erred by not finding Plaintiff had a marked limitation in concentrating, persisting, or maintaining pace, Plaintiff still would only have a marked limitation in one broad area of functioning, which is not enough to satisfy the paragraph B requirements.  As such, Plaintiff has not met his burden of showing he has a marked limitation in two areas of functioning or an extreme limitation in one area of functioning.  *See Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 372 (6th Cir. 2017) ("When a claimant alleges his impairments meet or equal a listed impairment, he must present specific medical findings to satisfy the criteria of the particular listing.").

Plaintiff argues the ALJ was required to analyze Menendes' opinion within his step three analysis.  But he provides no precedent for this argument nor is the Court aware of such a requirement.  Instead, the Court may look to the ALJ's reasoning as a whole to support his step three analysis and, as discussed further below, the ALJ found Menendes' opinion generally unpersuasive.  *Mark D. v.*

24

*Comm'r of Soc. Sec.*, No. 24-cv-166, 2025 WL 1656639, at *8 (E.D. Ky. June 11, 2025) ("The ALJ's explanation as to persuasiveness does not need to be lengthy, and there is no requirement that an ALJ discuss each limitation from an opinion that he adopts, or fails to adopt, when he has rejected or adopted the opinion on broader grounds." (citation modified)); *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) ("Because the ALJ properly discounted the medical opinions of the other doctors, he also properly excluded the limitations assessed by those doctors . . . ."). Indeed, although the ALJ's step three analysis is sparse, Plaintiff concedes in his reply brief that the Court may read the ALJ's analysis as a whole to better understand the ALJ's reasoning. (ECF No. 14, PageID.1819–20).

There is also substantial evidence that Plaintiff does not have a marked limitation in concentration within the ALJ's step three analysis alone. The ALJ discussed that Plaintiff claims he has a hard time concentrating and completing tasks. (ECF No. 5-1, PageID.48). But the ALJ then cited to record evidence that Plaintiff is able to prepare meals, manage funds, attend his medical appointments, drive, shop, use a computer, go to the gym, run errands, and take care of his children and the house. (*Id.*). Nonetheless, Plaintiff argues

> the ALJ's brief and selective recitation of selected facts in discussing the 12.00 Listings does not reflect an accurate comprehensive overview of Plaintiff's mental functioning. For example, Plaintiff was rated 100% disabled by the VA for his Major Depressive Disorder diagnosis. In 2021, Plaintiff stated that he had not spent any time at work, school, or doing volunteer work. The ALJ relies on a single report in January

2023 stating that "[P]atient reports volunteering at a school where his kids attend" but no details were listed referencing the frequency of these school activities or the time-frame in which they occurred. Plaintiff has repeatedly reflected significant distress over his mentally ill son and their differences of opinion leading to estrangement at times. Additionally, Plaintiff discussed exercise as a part of his alcoholism recovery with his mental provider and how it functions as a means of release from anxiety, tension, and anger. The ALJ failed to provide this context for Plaintiff's gym usage and does not articulate how this is inconsistent with Dr. Menendes' opinion. On the occasional instance that Plaintiff made efforts to DJ events, he also reported feeling disrespected and devalued by a client and was tempted to yell at them. Overall, the ALJ failed to articulate how any of the activities in which Plaintiff reported engaging were inconsistent with her marked limitations. Instead, the ALJ simply provided a list of activities taken out of context from the overall evidence.

(ECF No. 11, PageID.1796–97 (citations omitted)). The ALJ's list of activities provides support that Plaintiff is not markedly limited in concentrating. *See, e.g., Majeed v. Comm'r of Soc. Sec.*, No. 16-cv-2519, 2017 WL 5952878, at *9 (N.D. Ohio Oct. 12, 2017), *report and recommendation adopted*, 2017 WL 5901023 (N.D. Ohio Nov. 30, 2017) ("The ALJ may properly rely on [reports of daily activities] in his determination that [the plaintiff] is not markedly limited in her daily activities."). And Plaintiff's arguments are less about his inability to concentrate than they are about his limitations in interacting with others. Much of Plaintiff's recitation of the facts similarly focuses on his anger issues and perceived inability to interact with coworkers or the general public. (*Id.* at PageID.1783–88). But Plaintiff does not argue the ALJ erred in finding he was only moderately impaired in his ability to interact with others and has thus waived this argument. "[T]he Court will not search

26

the record for potential arguments or evidence beneficial to Plaintiff." *Marko v. Comm'r of Soc. Sec.*, No. 16-cv-12204, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (citation omitted). He has thus not undermined the ALJ's conclusion that his daily activities supported a finding that Plaintiff was not markedly limited in his ability to concentrate.

### 2. Opinion Evidence

Plaintiff next argues the ALJ erred when he failed to properly consider the supportability and consistency of Mendedes' opinion. (ECF No. 11, PageID.1798–1803). This argument is not persuasive.

As a refresher, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ must explain his or her approach with respect to supportability and consistency when considering a medical opinion. *Id*. § 404.1520c(b). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical

27

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). Importantly,

> The new regulation substantially reduces the ALJ's obligation to explain the basis for his or her assessment of medical opinions:
>
>> [Source-level articulation.]   Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record.   Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.   We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

*Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (quoting 20 C.F.R. § 404.1520c(b)(1)); *see also Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. 2022) ("Even for a medical opinion, there is no requirement to cite to every piece of evidence or conclusion.").

Plaintiff argues the ALJ's reasoning failed to properly assess the supportability and consistency factors:

28

On May 11, 2023, the claimant presented to a psychological consultative examination with Nathalie Menendes, Psy.D. He reported that he was diagnosed with depression five years prior, and he noted that his physical pain contributed to his depression. He indicated that he had not worked since 2018. He stated that he had not attended counseling "in a while" and he had never been psychiatrically hospitalized. When asked about daily activities, the claimant reported that he takes his daughter to school, sometimes goes to the gym if he feels well, cares for his children, tends to his home, cooks, and goes to the grocery store with his wife. Physical examination notes indicate that the claimant's gait and posture were normal, his clothing was clean and causal, his hygiene was good, and he was cooperative. He responded to questions well and was talkative. Mental status examination findings include good contact with reality, insight, self-esteem, and motivation. The claimant demonstrated good motivation, and he was able to function independently. His thoughts were spontaneous, logical, and organized. There was no evidence of hallucinations, delusions, persecutions, or other unusual thought content. The claimant endorsed occasional suicidal ideation, as well as sleep problems and significant somatic complaints. His speech was normal.

.   .   .

Based on the psychological consultative examination, Dr. Menendes opined that the claimant is able to understand simple and one step instructions and work procedures but will have moderate difficulty remembering them; he will have marked difficulty understanding and remembering complex and multi-step instructions and work procedures; he will have marked problems concentrating and persisting through a typical 8 hour day; he should be able to maintain socially appropriate behavior; and he should be able to adjust to changes in his routine and environment. This opinion is largely inconsistent with the evidence of record, which does not support marked difficulty in the areas of understanding, remembering, concentrating, and persisting. The evidence demonstrates that the claimant remains active in the gym, he has worked as a professional DJ, and he has volunteered at his children's school. He reported that he takes his daughter to school, tends to his home, cooks, and goes to the grocery store. Further, Dr. Menendes' findings are not supported by her own findings, which included cooperative attitude, good hygiene, appropriate dress, good insight, normal motor activity, and logical thought process. Further,

the claimant responded to questions well and he participated in the evaluation alone.  Therefore, her opinions are generally unpersuasive.

(ECF No. 5-1, PageID.50, 52 (citations omitted)).  Plaintiff argues this analysis is conclusory.  The Court disagrees.

Plaintiff also argues that although the mental status examination contained normal results, he reported feeling anxious and that his back was blasting that day. (ECF No. 11, PageID.1800).  But "a doctor's report that merely repeats a patient's assertions about her [disability] is not objective medical evidence."  *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (citation omitted).  Nor do these self-reports conflict with the ALJ's finding that Plaintiff is only moderately limited with respect to concentration.

Plaintiff then cites other record evidence that is consistent with Menendes' opinion.  But the question is not whether substantial evidence could support Menendes' limitations, but whether substantial evidence supports the ALJ's limitations.  *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) ("[W]hen the ALJ is presented with the not uncommon situation of conflicting medical evidence the trier of fact has the duty to resolve that conflict.  Our job is only to ensure that the Commissioner's determination is supported by substantial evidence." (citation modified)); *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. 2022).  While there may be conflicting evidence in the record or evidence that could go either way, the ALJ relied on substantial

30

evidence in his findings.   Therefore, Plaintiff's motion for summary judgment is denied.

## III.   ORDER

For these reasons, Plaintiff's motion (ECF No. 11) is **DENIED**, the Commissioner's motion (ECF No. 13) is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: July 22, 2026                    S/PATRICIA T. MORRIS
                                       Patricia T. Morris
                                       United States Magistrate Judge

31